DANIEL H. PARK

*v.*

SUPREME CIRCLE, BROTHERHOOD OF AMERICA, et al.

[Submitted February 27th, 1912. Determined February 28th, 1913.]

When complainant became a member of defendant mutual benefit association, the by-laws provided for a single death fund, created by a flat rate of dues, irrespective of age, at the rate of fifty cents a month, with a possibility of increase to sixty cents a month, from which should be paid, upon the death of each member, the sum of $500. Subsequent amendments to the by-laws created two divisions of the death fund, designated divisions 1 and 2, and provided that division 1 should include all members of the fund admitted on or after March 1st, 1910, and such members admitted prior thereto who elected to become members of that division, and division 2 should be composed of all members not included in division 1, and that the benefits of either division should be paid as follows (that is, $100 to the beneficiary of a member dying within one year from date of admission, $200 upon death within two years, &c.), the highest amount being $500 payable to beneficiaries of members dying after four years from date of admission; and the amendment also provided that the reserve fund, including the moneys of the death benefit fund, should be equitably apportioned among the whole membership in proportion to the duration of membership, and that part set apart for members of division 1 should remain a trust fund for losses arising under that division, and that part set apart for members of division 2 should be a trust fund for losses arising under that division.—*Held*, that the amendment in effect established withdrawal values based upon the period of membership, and therefore violated the contracts of those members who became such before the amendment, and hence was illegal.

On bill, &c., for injunction. Hearing at return of order to show cause.

*Mr. Oscar B. Redrow,* for the complainant.

*Mr. John F. Harned,* for the defendants.

LEAMING, V. C.

The purpose of the bill is to determine the validity, as against complainant and others similarly situated, of certain "laws"

adopted July 31st, 1912, by the supreme circle of a fraternal and beneficial society known as "Brotherhood of America." The bill is filed by a member of Welcome Circle, No. 3, and asserts that the action taken by the supreme circle is violative of his contractual rights.

The present hearing is at the return of an order to show cause for a preliminary injunction to restrain defendant from further acting under the amended by-law to the injury of the contractual rights asserted by complainant.

There is in connection with this association or "order" a system of beneficial insurance whereby at the death of a member certain money is paid to the member's appointed beneficiary. In the literature of the society the members thus entitled to death benefits are called "Members of the Death Benefit Fund" (formerly called "Funeral Benefit Fund") of the supreme circle. Annexed to the bill is a copy of the by-laws which were in force touching this fund in the year 1901, at the time complainant became a member. Section 1 of these by-laws provides:

"Any person between the ages of eighteen and forty-five years, initiated, reinstated or admitted by card as a beneficial member in a Circle or Home of this Order, shall thereby become a member of the Funeral Benefit (now called Death Benefit) Fund of the Supreme Circle, Brotherhood of the Union" (now Brotherhood of America).

This and other sections contemplate that all members of the order between the ages named, not physically disqualified, shall become "members of the fund." By the subsequent sections various details and conditions are provided touching memberships and forfeiture of memberships in the fund. No provision is made contemplating the establishment of a withdrawal value of membership or the right of withdrawal without forfeiture of all interest in the fund. By section 14 it is provided:

"The dues to this Fund shall be fifty cents per month for all members of the same; provided, however, that when the receipts of this fund (together with the cash in hand) are not sufficient to pay the liabilities for such month, the Trustees shall increase the monthly dues to sixty cents until the income and cash in hand shall equal the liabilities."

Section 15 provides that the death benefit of a member of the fund dying within one hundred and eighty-three days from the

date of admission with Bright's disease, consumption, or valvular disease of the heart, shall be $5, and no more. In all other cases it shall be $500. Section 20 provides:

"Five per cent. of the monthly receipts shall be added to the Reserve Fund, the same to be deposited in banks or trust companies paying interest. Said depositories to be designated by the Trustees, or to be invested in such manner as the Supreme Circle may direct. No appropriation shall be made from the Reserve Fund, except for the payment of funeral benefits for members, and then only by a vote of the Supreme Circle at an annual or special session."

From the foregoing it will be observed that at the date complainant became a member the by-laws contemplated the establishment of a single fund to be created by a flat rate of dues, and the payment from that fund to the beneficiary of each deceased member the sum of $500, unless the member died within one hundred and eighty-three days by reason of one of the diseases named, and in that event but $5; and further contemplated that the dues should be, irrespective of the age of the member, fifty cents per month, with possibility of increase to sixty cents per month in a certain contingency there stated.

The answer sets forth, and it may be here assumed as a fact, that in the early years of the organization fifty cents per month from members was found to raise more money than was necessary; but that after the fund had been established for some years it was ascertained that by reason of the members growing older the death rate was increased, and, in consequence, the dues of fifty cents per month became apparently inadequate. Accordingly, a change in the by-laws was made to take effect March 1st, 1910. By that amendment of the by-laws the flat rate of fifty cents per month was abolished and a schedule of rates was adopted graduating all dues according to the age of the members as follows: Sixteen to twenty-one years, forty cents per month; twenty-one to twenty-six years, forty-five cents; thirty-one to thirty-six years, sixty cents; thirty-six to forty-one years, seventy-five cents; forty-one and upwards, ninety cents. A bill was then filed in this court by a member to enjoin the supreme circle from enforcing the new by-law. This court granted the injunction sought, holding, among other things, that "complain-

ant's membership in the death benefit fund constitutes a contract between him and the order, and one which could not be materially altered under the assumption of power to amend existing in the laws of the order in general terms." The decree of this court was subsequently affirmed by the court of errors and appeals on the opinion filed in this court by Vice-Chancellor (now Chancellor) Walker. That opinion has not yet been reported. Pending that suit this court permitted the supreme circle to receive the increased rates of dues from such members as were willing to pay the increased rates, but enjoined the suspension of members for refusal to pay the increased rates. See *Poole* v. *Supreme Circle, 80 N. J. Eq. (10 Buch.) 259.*

The consequences flowing from this change of rates, and the subsequent determination that the increase could not lawfully be made as against members existing prior to the change, was that at the time of the final decision of the suit referred to by the court of last resort three classes of members existed. Those who had joined prior to March 1st, 1910, and who had refused to accede to the increased rate. Those who had joined prior to March 1st, 1910, and who had paid the increased rate subsequent to that date. Those who had joined subsequent to March 1st, 1910; these had all paid the increased rates. To meet these conditions the by-laws were further amended July 31st, 1912. It is these further amendments of the by-laws which complainant now challenges by the present bill.

These further amendments create two divisions of the fund, designated respectively as divisions 1 and 2:

"Division 1 shall be composed of all members of the death benefit fund who were admitted on or after March 1st, 1910, and such members admitted prior to that date who shall elect to become members of said division. Division 2 shall be composed of all other members not included in division 1."

The amendments further provide as follows:

"The benefits to be paid upon the death of a beneficial member of either Division of this fund shall be as follows: Class A. Dying within one year from date of last admission, $100. Dying within two years from date of last admission, $200. Dying within three years from date of last admission, $300. Dying within four years from date of last admission, $400. Dying after four years from date of last admission, $500."

This, it will be observed, will reduce the amount payable to a member of division 2 who has not been a member longer than four years. As complainant has been a member longer than four years this amendment does not reduce the amount payable to him. The rates of dues provided for division 1 are made the same as in the former amendments, already referred to. The rates for division 2 are left the same as when complainant became a member. A further amendment was made apportioning the accumulated reserve fund between the two divisions. That provision is as follows:

"The Reserve Fund held by the Supreme Circle shall be equitably divided by apportioning it among the whole membership in proportion to the duration of membership; and that portion set apart for members of division 1, together with the accumulation that may come to it under these laws, shall be and remain a trust fund separate and distinct for losses arising in division 1; and that portion set apart for members of division 2, together with the accumulation that may come to it under these laws, shall be and remain a trust fund separate and distinct for losses arising under division 2; and under no circumstances or at no time shall the trust fund of one division be liable for or be taken to pay the losses arising under the other division."

Another amendment is to substantially the same effect as the one last quoted, and includes all moneys of the death benefit fund.

It is conceded that the division of the fund between the two divisions referred to in the amendment last above quoted, "in proportion to the duration of membership," means that the total duration of membership is ascertained by giving to each member a numeral corresponding to his years of membership, and the aggregate of these numerals will represent the total years of membership in the fund; the total of these numerals in each separate division will then represent the proportionate amounts of the entire fund to be transferred to each division.

From the foregoing it appears that it having been found unlawful, as against members who joined prior to March 1st, 1910, to increase dues above fifty cents per month (except in the contingency stated, and then only to sixty cents per month) or to graduate the dues of such members according to ages, and also

unlawful, as against such members, to reduce the amount to be paid to them below $500 (except in the event of death by certain diseases within one hundred and eighty-three months from date of membership, in which event the amount payable was $5), a plan was adopted in 1912, the substantial effect of which was to create a new death benefit fund to which all members joining the order after March 1st, 1910, should belong and to which all members who had joined prior to that time were privileged to transfer their membership and also transfer a percentage of the assets of the old fund.

It is unnecessary to here question the right of the society to establish a new death benefit fund with dues and benefits graduated according to age and to extend the privilege of membership in that fund to all members of the society; nor is it necessary to here determine that the rights of members in the old fund are invaded by a new by-law which prevents future accessions to the membership to that fund. It may be appropriately suggested in that connection, however, that such doubt as may be said to have heretofore existed touching the adequacy of the amount of dues paid to that fund to insure its successful operation would seem to be converted into practical certainty by the inhibition of new members.

The amendments here in question go much further than the mere establishment of a new fund or the enactment of a requirement that all new members shall become members of the new fund. These amendments privilege a member of the old fund to withdraw his membership from that fund and privilege such member in so doing to take with him a defined amount of money from the accumulations in that fund for the benefit of the new fund in which he becomes a member.

In effect there is thus established not only a withdrawal privilege but also a withdrawal value, provided the withdrawal is from the old to the new fund. In this connection it may be here appropriately suggested that it cannot, consistently with the ordinary course of human conduct, be assumed that such withdrawals will be by members of the average age of membership; members over twenty-six years of age could not

be transferred without an increase of dues; members under twenty-six years of age would, by transfer, be subjected to less dues. The result seems reasonably obvious. The requirement that all new members of the order join the new fund necessarily denies to the old fund the benefit of members with long expectancies of life; the privilege of withdrawal from the old to the new fund naturally tends to remove from the old fund the members thereof with the longer life expectancies.

But even though it should be assumed that the society, under a general power of amendment of its by-laws, retains to itself not only the right to establish a new fund and to exclude new members from joining the old fund, but also the right to establish withdrawal values of memberships, and permit the transfer of memberships and the withdrawal values so established to a new fund—rights which I am by no means prepared to concede—it is entirely manifest that such withdrawal values could only be established in a manner in harmony with the contracts made with the several members of the fund. The contracts of membership under which the fund was established contemplate the payment to the fund by all members of the fund an equal monthly amount, and contemplate a payment from the fund of $500 to the beneficiary of a member at the decease of a member, irrespective of the member's age or period of membership. Under such contractual engagements the rights in the fund of a member of the fund who is twenty years of age and who has enjoyed one year's membership is less in real value than that of a member who is forty years of age and who has enjoyed an equal period of membership. As a system of insurance it may have been unscientifically planned; but such is the nature of the several contracts which were entered into by the society and all of the members of the old fund. It necessarily follows that to give to a younger member the same withdrawal value as that of an older member of equal period of membership and authorize the younger member to transfer his membership and such established withdrawal value to a new fund is in disregard of the rights of the older member, as such rights are established by the contracts of membership. It is

true that each has contributed to the fund the same amount in case each has been a member for the same period of time; but the contributions have been made under contractual engagements that both should, at death, receive the same amount, irrespective of their respective ages, or life expectancies, at the time of becoming members. It therefore becomes immaterial, under the contracts made, how long a member has been a member or what his age may be; after becoming a member his real interest in the fund is, under such a system, dependent solely upon his life expectancy, for that element is the only element of inequality of the several members. The establishment of withdrawal values based alone upon periods of membership is consequently violative of the contractual rights flowing from the several contracts of membership. It seems to me entirely clear that complainant is entitled to protection against the enforcement of the amended by-laws.

I do not think, however, that a preliminary injunction should be issued if defendant prefers to go to final hearing in the belief that additional light can in that manner be thrown on the case. While no substantial dispute at this time appears to exist touching the material facts, it seems manifest that no emergent condition now exists that demands preliminary relief; the division of the fund is essentially a matter of bookkeeping which can be easily adjusted at any time. If, however, defendant is content to allow the case to stand upon the evidence now before the court, I will advise a preliminary writ restraining defendant from enforcing the by-law that transfers money from the old to the new fund.